UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| GEOFFREY REESE, | ) | |
| --- | --- | --- |
| Plaintiff | ) | |
| v. | ) | 1:14-cv-00244-GZS |
| ROBERT BOUFFARD, et als., | ) | |
| Defendant | ) | |

## RECOMMENDED DECISION

In this action, Plaintiff Geoffrey Reese, proceeding *pro se*, alleges that Defendants violated his constitutional rights by, *inter alia*, placing him in "administrative segregation" in response to his challenge to the requirement that he share a cell ("double bunk") with another inmate.

The matter is before the Court on Defendants' Motion to Dismiss (ECF No. 44).[1] Through their motion, Defendants maintain that Plaintiff has failed to state an actionable due process claim or equal protection claim.

As explained below, following a review of the pleadings, and after consideration of the parties' arguments, the recommendation is that the Court grant the Motion.

### FACTUAL BACKGROUND

The facts set forth herein are derived from the factual allegations in Plaintiff's Complaint (ECF No. 1), Amended Complaint (ECF Nos. 9 and 9-1), and Second Amended Complaint (ECF Nos. 34 and 34-1), which allegations are supplemented by numerous exhibits attached to the

---

[1] The Court referred the motion for report and recommended decision.

pleadings, and which facts are deemed true when evaluating a motion to dismiss.[2] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

In his complaint, filed June 16, 2014, Plaintiff sets forth five claims:

(1) That on February 3, 2014, he was "erroneously placed on [administrative segregation] for refusing to compromise his right to be free from discrimination and selective enforcement in protest of being approached to double-bunk contrary to the criteri[a] set forth in departmental policy" and

That certain evaluation and review proceedings set forth in policy were not fully observed as stated in the policy;

(2) That on February 3, 2014, he was charged with refusing to obey an order and with threatening in connection with his protest concerning the double bunk order;

That a continuance of the disciplinary hearing was not granted to permit him to confer with "counsel substitute prisoner Dwyer" (PageID # 6);

That his argument that his statement on February 3, 2014, was not a threat was "dismissed" even though it was an "arguable interpretation" (*Id.*);

That he could not purchase stationary and hygiene items "until approximately thirty (30) days of being housed in the special management unit" (PageID # 7);

That the placement prevented him from having prayer oils and rosary beads, although he was able to have a prayer rug in the special management unit;

That the disciplinary hearing officer sanctioned him to a loss of 15 days of "good time" (PageID # 8);

(3) That when he sought to retrieve his Playstation 2 on April 10, 2014, it was confiscated due to his "conviction" on the threatening charge (PageID # 9), which sanction Plaintiff argues was excessive, violated the Administrative Procedures Act, violated the Double Jeopardy Clause, and was unlawful because he owned the Playstation 2 before the "Prisoner Allowable Property policy … was enacted" (PageID # 10);

That he met with Deputy Warden Tausek to attempt an informal resolution and then filed a subsequent grievance for which certain procedures were not followed;

That his request for a "stay of execution" under 5 M.R.S. § 11004 went unheeded (*Id.*);

---

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

2

(4) That double bunk requirements are selectively enforced;

That it was demanded that he double bunk even though he declined for good reasons, including that there are 28 or more single cells available and that he was on good behavior, participated on the executive board of a civic group (N.A.A.C.P.), and was in a single cell since 2009 until December 2013;

That he was singled out for his participation in a letter-writing campaign that advanced a proposal for establishing criteria for deciding who may obtain a single cell, based on "rational considerations, statistical data, etc." (PageID # 12), allegedly in violation of a policy assuring impartial and fair treatment and in violation of equal protection precepts;

That on February 21, 2014, he was "requested to move back to the closed unit from S.M.U." (PageID # 17) but refused because it was general population and he would still retain administrative segregation status;

That he was again written up for disobeying an order;

That he "was forced to move back to the closed unit" on February 27, 2014 (PageID # 18) and was placed in a bare cell, without a mattress, for 11 hours, and was denied hygiene items and clean clothes for "nearly three days" (PageID # 19);

(5) That he met with Deputy Warden Tausek to discuss his various grievances, but "has not noticed or been informed of any genuine effort by the administration to rectify, address, or necessarily 'improve' the issues" (PageID # 20-21);

That he was able to meet with former Commissioner Ponte and the Maine State Prison's "entire administration" to discuss his concerns and ideas related to double bunking, "believes he qualified for the 'privilege' of [a] single cell" (PageID # 21);

That he believes that his "peaceful protest" activity in this regard resulted in retaliatory placement in a double bunk, and believes he should have been permitted "to select the prisoner he deemed most compatible" (PageID # 22);

That even after his meeting with the Commissioner, Unit Manager Mendez exercised his "discretion" and requested that Plaintiff double bunk and imposed discipline based on his refusal to do so (PageID # 23);

That "[f]rom the beginning of this dilemma, until 4/6/2014, prisoner was on special management status … which [was] erroneously misapplied in order to avoid alternative methods of dealing with the underlying issue" (PageID # 24);

That he remains assigned to the C-pod of the closed unit, which unit is used as a "disciplinary pod" (*Id.*), without ever receiving an explanation for why he is being

3

assigned there, where he does not have immediate access to drinking water, and in-cell toilet, or free access to medication, and where he is not allowed to leave his prayer rug on the floor throughout the day due to an "overreaching and unreasonable" policy (PageID # 26).

On July 11, 2014, Plaintiff filed an amended complaint (ECF Nos. 9 & 9-1.) In the amended complaint, Plaintiff reiterated the five basic claims set forth in his original complaint. A comparison of the two pleadings does not reveal any substantive differences between the original complaint and the amended complaint.

On September 11, 2014, Plaintiff filed another amended complaint (ECF No. 34). In this pleading, Plaintiff asserts facts regarding an incident that occurred on June 9, 2012, during which he was accused of causing 16 other prisoners to fail to comply promptly with an order to lock down, and for which he was placed on "Emergency Observation Status" (EOS) for 72 hours (PageID # 487). Plaintiff maintains that he did not receive a copy of the placement form or a copy of the "Preliminary Individualized Plan" (*Id.*), and that he was not allowed to attend his 24-hour review. Additionally, Plaintiff contends that he was not allowed to call a certain witness at his disciplinary hearing.

According to Plaintiff, he "was blatantly discriminated against" as the sanctions imposed on him were worse than the sanctions imposed on others involved in the incident. (PageID # 489.) The sanctions included Plaintiff's removal from a civic group leadership position and the termination of his employment in the "Industries" program, which termination resulted in lost wages (PageID # 490). Plaintiff asserts that Defendants' conduct violated the Prison's policy prohibiting discrimination, including inequitable treatment based on race, color, sex, ancestry, or national origin, age, religion, genetic information, disability, sexual orientation. Another prisoner, whom Plaintiff names but does not describe, engaged in similar conduct but was allowed to return to the work program following the 72-hour EOS sanction.

Defendant Barnhart also removed Plaintiff from his vice presidential position with the prison's N.A.A.C.P. civic group for six months, a sanction that was Defendant Barnhart's "sole decision" (PageID # 493). Plaintiff states: "Most importantly, whether or not this imposed punishment was actually appropriate and/or excessive is 'debatable.' However, former Warden Patricia Barnhart's actions were in direct breach of departmental policy … which … requires the Commissioner's approval to suspend/remove a prisoner from an elected position of any group" (*Id.*).

## DISCUSSION

**A.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, courts must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that one or more defendants are legally responsible for the claims at issue. *Id.*

"The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 569 n. 14 (2007)). Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist

entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of *pro se* plaintiffs "is not to say that *pro se* plaintiffs are not required to plead basic facts sufficient to state a claim").

**B.     Analysis**

Plaintiff's pleadings can fairly be characterized as asserting claims regarding prison discipline (both in terms of disciplinary process and disciplinary conditions), discrimination, and religious freedom.

### *1.     Prison discipline*

Plaintiff is and was during the incidents about which he complains serving an extended sentence following a state court conviction for elevated aggravated assault and aggravated assault. *State v. Reese*, 2010 ME 30, 991 A.2d 806. At all relevant times for this section 1983 action,[3] therefore, Plaintiff was not a pretrial detainee.

As a convicted inmate, Plaintiff's prison discipline due process rights differ from the rights of a pretrial detainee. For an inmate serving a sentence, the Due Process Clause "does not protect every change in the conditions of confinement having a substantial adverse impact." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). Instead, because he has "no liberty interest in freedom from state action taken 'within the sentence

---

[3] Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

As Defendants argue, the Department of Corrections is not amenable to a section 1983 claim for money damages due to Eleventh Amendment immunity. *Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Gonzalez-Feliciano*, 695 F.3d 83, 102 (1st Cir. 2012).

imposed,'" *Id.* at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)), to sustain a federal constitutional claim for violation of the Due Process Clause, Plaintiff must allege facts that plausibly suggest that he was subjected to an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Id.* at 484. Unless he can show such a hardship, the mere violation of prison disciplinary procedures will not support a due process claim. *See id.* at 480-84.

A review of the prison conditions about which Plaintiff complains does not reveal "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. Double bunking, denial of video game privileges, 11 hours without a mattress, a 3-day denial of hygiene items and clean clothes, suspension of civic group privileges, termination of work privileges, and 30 days of special management status do not describe the kind of atypical and significant hardships that would support a due process claim brought by a convicted inmate.[4] On these claims, Plaintiff does not assert a plausible claim for deprivation of due process, and dismissal with prejudice is appropriate.

Plaintiff also alleges that he has suffered a loss of good time as a consequence of a disciplinary ruling. A sanction that affects the duration of a prisoner's sentence can support a due process claim. *Sandin*, 515 U.S. at 487. As Defendants argue, however, a section 1983 action is not actionable "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (discussing the holding of *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)). Plaintiff, therefore, must pursue his claim

---

[4] The *Sandin* Court held, for example, that an atypical and significant hardship did not exist where the respondent spent 30 days in isolation except for 50 minutes each day for brief exercise and a shower, during which he remained isolated and wore leg irons and a waist chain. *Sandin*, 515 U.S. at 494 (Breyer, J., dissenting).

regarding loss of good time credit in the context of "federal habeas corpus (or appropriate state relief)." *Id.* at 78.[5]

### 2. *Discrimination*

Plaintiff's allegations of discrimination require an assessment of the Equal Protection Clause of the Fourteenth Amendment and whether Plaintiff has stated such a claim under section 1983. To state a claim of discrimination, Plaintiff must assert more than a conclusory allegation that he was disciplined as the result of race or protected speech activity. That is, Plaintiff must assert (1) facts that could support a plausible inference that he experienced differential treatment when compared to another prisoner "similarly situated in all relevant respects," *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014) (internal quotation marks omitted), and (2) facts that suggest that the difference in treatment "was based on an impermissible consideration, such as race," *Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2012).

Plaintiff first alleges that he was disciplined for refusing to double bunk and "arguably" threatening another inmate. Preliminarily, the alleged conduct cannot reasonably be construed as impermissible grounds for discipline in the prison setting. Additionally, Plaintiff does not assert that another individual refused to double bunk and threatened another inmate, yet was not disciplined. Plaintiff also does not allege that inmates of a certain race were treated differently when prison administrators determined which inmates would be required to double bunk. In short, Plaintiff's allegations do not allege facts that plausibly suggest that Plaintiff was disciplined, or disciplined differently, because of his race or because he engaged in constitutionally protected speech.

---

[5] On this claim, dismissal without prejudice is appropriate as Plaintiff could maintain a section 1983 action if he obtained state relief or habeas relief. *DeWitt v. Wall*, 121 Fed. App'x 398, 399 (1st Cir. 2004) (unpublished, per curiam opinion).

8

In his most recent pleadings (ECF Nos. 34 & 34-1), Plaintiff states that another inmate received preferential disciplinary treatment following an incident in June 2012 that involved many different inmates. According to Plaintiff, the other inmate was permitted to return to work following a 72-hour EOS sanction, but Plaintiff was not allowed to return to work. Plaintiff, however, does not allege that he is in a protected category when compared to the inmate. Plaintiff also does not assert any facts to suggest that Plaintiff and the inmate were otherwise similarly situated (e.g., that they had the same degree of involvement in the incident, that they had a similar history of misconduct). Plaintiff's mere reference to this inmate thus is insufficient to support a discrimination claim.

Finally, Plaintiff's allegations regarding Defendant Barnhart's decision to suspend Plaintiff's participation in a civic organization lack sufficient facts to support the inference that Defendant Barnhart imposed the sanction because of Plaintiff's race or for any other impermissible reason. The simple fact that Defendant might have suspended Plaintiff from participation in a particular civic organization, without any facts that reflect that the suspension was discriminatory, cannot support the conclusion that the suspension was imposed unlawfully.

### 3. *Religious freedom*

Title 42, Chapter 21C, of the United States Code, entitled "Protection of Religious Exercise in Land Use and by Institutionalized Persons" (RLUIPA), prohibits state prisons receiving federal funds from imposing "a substantial burden on the religious exercise" of inmates, "even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to

9

attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005). Although Plaintiff makes no mention of RLUIPA in his pleadings, the Court may consider *sua sponte* whether his factual allegations raise such a claim. *See* 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

To state a claim for violation of RLUIPA, a prisoner must allege facts that support an inference that the prisoner "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government. *LeBaron v. Spencer*, 527 Fed. App'x 25, 28-29 (1st Cir. 2013) (internal quotation marks omitted). In this context, a substantial burden "is one that puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 29 (quoting *Spratt v. Rhode Island Dep't of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007)).

RLUIPA provides Plaintiff with a claim "against a government," but does not authorize an "individual capacity" claim against the individual defendants. 42 U.S.C. § 2000cc-1(a). Although the statutory definition of "government" includes "any … person acting under color of State law," the statute does not authorize individual capacity liability as under section 1983. *Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012) (citing additional circuit court authority and explaining that RLUIPA was enacted pursuant to Spending Clause authority, and therefore does not run against individual government employees except in their official capacities). Here, Plaintiff has included the Maine Department of Corrections as a party defendant. Plaintiff's RLUIPA claim, therefore, will be analyzed in the context of a claim against the Department.

Significantly, RLUIPA does not authorize a claim for money damages. *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011) ("States, in accepting federal funding, do not consent to waive their

sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."). Assuming, *arguendo*, that Plaintiff has stated facts that could support an inference that the Department violated RLUIPA,[6] the statute only authorizes injunctive relief. In this case, however, Plaintiff cannot obtain injunctive relief because he has not alleged that he is presently subjected to disciplinary confinement that deprives him of access to his rosary beads or prayer oils. *Selby v. Caruso*, 734 F.3d 554, 561 (6th Cir. 2013) ("[Plaintiff's] requests for declaratory and injunctive relief under RLUIPA became moot when he was released into the general prison population …"); *Warner v. Patterson*, 534 F. App'x 785, 789 (10th Cir. 2013) *cert. denied*, 134 S. Ct. 1313 (2014) ("Assuming that [the plaintiff] will be returned to the [placement at issue], he may not face the same … policies regarding the possession of religious materials…"); *Copeland v. Livingston*, 464 F. App'x 326, 331 (5th Cir. 2012) ("Because [plaintiff's] request for an injunction is moot and because, as discussed above, his pursuit of damages is barred by immunity doctrines, he lacks the necessary injury-in-fact to pursue declaratory relief."). Because Plaintiff does not allege an ongoing deprivation, any request for injunctive relief would be moot. Dismissal of Plaintiff's RLUIPA claim is thus warranted.

---

[6] Defendants argue that Plaintiff has not alleged that any policy concerning use of property in the C-pod was "applied to him and, if so, how it affected his practice of religion." (Motion to Dismiss at 10.) However, Plaintiff alleges that prayer oils and rosary beads are prohibited property inside the special management unit and that he is not permitted to leave his prayer rug on the floor throughout the day. With respect to his prayer rug, Plaintiff asserts that it is irrational for Defendants to require that he pick up his prayer rug when it is not in use because prayer rugs "belong on the floor and the fact that they are intended to be used in that manner ought [to] permit them to remain there." (PageID # 26.) Plaintiff's allegations and argument regarding his prayer rug do not describe a scenario in which he has been pressured to modify his religious behavior or to violate his beliefs. It might be convenient for Plaintiff to leave his prayer rug on the floor of his cell at all times, but it does not substantially burden his practice of religion to put it away when it is not being used for religious practice. With respect to rosary beads and prayer oils, Plaintiff's allegations reflect that he is permitted these items, except he was denied access to them during a 30-day stay in the special management unit. (PageID # 7.) The question is whether denial of these items for 30 days as a consequence of a disciplinary cell assignment supports a plausible inference that Plaintiff was substantially burdened in his exercise of religion.

11

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant Defendants' Motion to Dismiss (ECF No. 44).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of January, 2015.